IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| SALON SUITES MEMORIAL GATEWAY, LLC, | § § § § |
| Plaintiff, | § CIVIL ACTION NO. H-23-2408 |
| v. | § § |
| JOHNATHAN JAVIER DAVILA, et al., | § § |
| Defendants. | § § § |

**MEMORANDUM AND OPINION**

The plaintiff, Salon Suites Memorial Gateway, LLC, hired Davila General Contractors, LLC to construct a tenant space for a salon in Houston, Texas. Before the project was completed, Davila General Contractors filed for bankruptcy and ceased work on the salon. In the bankruptcy proceeding, Salon Suites alleged that Davila General Contractors had breached the construction contract and secured the contract and certain payments through fraud. Following a trial, the bankruptcy court awarded Salon Suites $15,250—a fraction of what it had sought—and denied all other relief. Salon Suites then filed this action against the family members who own and operate Davila General Contractors, alleging fraudulent inducement to enter the construction contract.

The court rules that Salon Suites's claims are precluded by the bankruptcy judgment. The case is accordingly dismissed with prejudice. The reasons are set out below.

**I.     Background**

    **A.     The Construction Contract**

In May 2020, Salon Suites Memorial Gateway, LLC requested a bid from Davila General Contractors, LLC "to serve as the general contractor to complete the finish out of an existing tenant

space" in Houston, Texas. (Docket Entry No. 17 at ¶ 14). Joshua and Johnathan Davila responded to Salon Suites's bid request with assurances, given between May and October, that it had many satisfied clients, was competent to "build high-end salons," and that accepting the $1,022,841 bid was Salon Suites's "best chance of having the Project completed by March 1, 2021." (*Id.* at ¶¶ 14–18). Joshua Davila was the Business Development Representative, and Johnathan Davila was the President and a Member, of Davila General Contractors. (*Id.* at ¶ 7).

Salon Suites alleges that when Davila General Contractors was trying to win Salon Suites's business, the company was suffering a severe "liquidity shortfall." (*Id.* at ¶ 8). In June 2020, Davila General Contractors took out a $149,000 loan from the United States Small Business Administration. (*Id.* at ¶ 9). In September 2020, Davila General Contractors entered into a revenue purchase agreement with Kalamata Capital Group for the purchase and sale of future receivables. (*Id.* at ¶ 10). Under the agreement, Davila General Contractors "purchased future receivables valued at $468,750.00 for $375,000.00 at 15% interest." (*Id.*). Only a few days later, Davila General Contractors took out an additional loan, in the amount of $300,308.03, from Velocity Capital Group. (*Id.* at ¶ 11).

Persuaded by Davila General Contractor's sales pitch, and ignorant of its financial troubles, Salon Suites accepted Davila General Contractor's $1,022,481.06 bid and the parties entered into a construction contract. (*Id.* at ¶ 19).

Between November 2020 and December 2020, Davila General Contractors requested and received three separate payments from Salon Suites for work on the project. (*Id.* at ¶¶ 20, 23, 27). Davila General Contractors warranted that each payment would be used "to promptly pay in full all of [its] laborers, subcontractors, materialmen, and suppliers for all work, materials, equipment, or services provided" for the project. (*Id.* at ¶ 20).

In December 2020, after Salon Suites had sent its third payment to Davila General Contractors, Johnathan Davila sent Salon Suites a letter explaining that it was "shutting its doors" due to the "dramatic drop in business" from the COVID-19 pandemic, and that it would be ceasing work on the project immediately.  (*Id.* at ¶ 29).

After Davila General Contractors withdrew from the project, Salon Suites learned that, of the $227,160.40 that Salon Suites had paid Davila General Contractors, "only one subcontractor was paid in the amount of $37,950.00." (*Id.* at ¶ 30).  The other subcontractors that Davila General Contractors had hired demanded immediate payment from Salon Suites and "threatened to file mechanic liens on the Project." (*Id.*).  "To minimize the construction delays and risk of liens being placed on the Project," Salon Suites paid the subcontractors a total of $362,841.33.  (*Id.*).

In February 2021, Davila General Contractors filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code.  (*Id.* at ¶ 7).  *See In re Davila Gen. Contractors, LLC*, No. 1:21-bk-10090, Doc. 1 (Bankr. W.D. Tex. 2021).  Salon Suites then hired a new general contractor to take over the project.  (Docket Entry No. 17 at ¶ 32).  Salon Suites's work with the new contractor revealed that Davila General Contractor's bid proposal had been "grossly deficient." (*Id.*).  Davila General Contractors failed to factor the staircase into the bid, "which was one of the most important aspects of the construction." (*Id.*).  The staircase was "never under contract" with Davila's subcontractors.  (*Id.*).  There were also "extensive gaps" "for additional critical items in the buildout." (*Id.*).  Finally, Salon Suites learned, "[b]ased on discussions with other reputable general contractors," that Davila General Contractors had "underbid the project by approximately $170,000." (*Id.* at ¶ 33).

3

According to Salon Suites, Davila General Contractors's "Bid Proposal and Construction Contract were just a means to an end—an artfully crafted plan to keep the sinking ship afloat for a few more weeks." (*Id.* at ¶ 34).

### B.     The Bankruptcy Proceeding

In July 2021, Salon Suites moved to dismiss Davila General Contractor's bankruptcy case for cause under 11 U.S.C. § 707(a). Salon Suites argued that dismissal was warranted because of Davila General Contractors's "egregious" bad faith conduct and "fraud" in "knowingly underbid[ding] the construction cost of the Project knowing it had no intention of completing the project or upholding its end of the bargain" and making "fraudulent misrepresentations . . . in order to persuade Salon Suites into making payments." *In re Davila*, No. 1:21-bk-10090, Doc. 31 at ¶ 21. The bankruptcy court denied without prejudice Salon Suites's motion to dismiss. *In re Davila*, No. 1:21-bk-10090, Doc. 84.

Salon Suites also filed a proof of claim, alleging that Davila General Contractors owed it $1,989,618.06 under the construction contract. (Docket Entry No. 21-1). Salon Suites alleged that Davila General Contractors "knowingly entered into the Construction Agreement with Salon Suites knowing it had no intention of completing the project or upholding its bargain of the deal. . . . . [Davila General Contractors]'s actions and/or omissions equate to negligence, negligent misrepresentations, breach of contract, breach of implied warranties, breach of express warranties, causes of actions under the Deceptive Trade and Practices, breach of fiduciary duty, fraud and conversion." (*Id.* at 5). Salon Suites later filed an amended proof of claim and reduced its claimed damages to $770,983.64. (Docket Entry No. 21-2).

In August 2021, the Chapter 7 trustee filed an adversary proceeding against Salon Suites for turnover of the estate's property based on the contract receivables owed under the construction

contract. (Docket Entry No. 21-3). In May 2022, the Chapter 7 trustee amended its complaint against Salon Suites to add claims for accounts receivable and avoidance of transfers of portions of the contract receivables. (Docket Entry No. 21-4 at 6–8). In the amended complaint, the trustee also objected to Salon Suites's proof of claim. (*Id.* at 8–9).

In September 2022, the bankruptcy court held a trial in the adversary proceeding against Salon Suites. (Docket Entry No. 21-5). The court entered a final judgment awarding Salon Suites an allowed unsecured claim of $15,250 and denying all other relief. (*Id.*).

**C.     This Case**

Salon Suites filed this action in June 2023. (Docket Entry No. 1). Salon Suites's operative complaint alleges a single count of fraudulent inducement against Joshua and Johnathan Davila. (Docket Entry No. 17 at 11–13). Salon Suites alleges that the Davilas made "specific representations . . . concerning" the following:

   i.)    Davila General Contractors was a successful general contractor.

   ii.)   Davila General Contractors primarily built "high-end" salons.

   iii.)  Davila General Contractors had noteworthy clientele.

   iv.)   Davila General Contractors had noteworthy projects.

   v.)    Davila General Contractors' bid would be competitive.

   vi.)   Davila General Contractors was the Plaintiff's best chance of having the Project completed by March 1, 2021.

   vii.)  Davila General Contractors would complete the Project.

(*Id.* at ¶ 37).

Salon Suites also alleges that the Davilas made misrepresentations after the execution of the construction contract. The misrepresentations included falsely representing that they would

5

pay subcontractors with the payments received from Salon Suites. (*Id.* at ¶ 43). Salon Suites seeks actual and punitive damages. (*Id.* at ¶¶ 47–51).

In October 2023, the Davilas moved to dismiss Salon Suites's amended complaint under Federal Rule of Civil Procedure 12(b)(1), (6), and 9(b). (Docket Entry No. 21). The Davilas argue that the final judgment entered in the adversary proceeding by the bankruptcy court is preclusive of Salon Suites's fraudulent inducement claim. Alternatively, they argue that Salon Suites's allegations do not satisfy Rule 9(b)'s heightened pleading standard for fraud. Salon Suites has filed a response in opposition to the motion to dismiss, (Docket Entry No. 22), and the Davilas have filed a reply, (Docket Entry No. 24).

In March 2024, the court granted the Davilas's unopposed motion to stay the proceedings pending the court's ruling on their motion to dismiss. (Docket Entry No. 28).

Based on the pleadings, the briefs, the public filings in the bankruptcy case of which the court takes judicial notice, and the applicable law, the motion to dismiss is granted. (Docket Entry No. 21). The analysis follows.

**II.    Preclusion**

The doctrine of preclusion, or *res judicata*, "bars the litigation of claims that either have been litigated or should have been raised in an earlier suit." *Duffie v. United States*, 600 F.3d 362, 372 (5th Cir. 2010). "Although *res judicata* generally cannot be raised in a motion to dismiss and should instead be pleaded as an affirmative defense, dismissal under Rule 12(b)(6) is appropriate if the *res judicata* bar is apparent from the complaint and judicially noticed facts and the plaintiff fails to challenge the defendant's failure to plead it as an affirmative defense." *Anderson v. Wells Fargo Bank, N.A.*, 953 F.3d 311, 314 (5th Cir. 2020) (quotation marks and quoting reference

6

omitted).  The district court may "take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); FED. R. EVID. 201.

The elements of *res judicata* are:

> (1) the parties in the subsequent action are identical to, or in privity with, the parties in the prior action; (2) the judgment in the prior case was rendered by a court of competent jurisdiction; (3) there has been a final judgment on the merits; and (4) the same claim or cause of action is involved in both suits.

*Duffie*, 600 F.3d at 372.  Only the first and fourth elements are at issue here.

"[A] person may be bound by a judgment even though not a party if one of the parties to the suit is so closely aligned with his interests as to be his virtual representative." *Aerojet–Gen. Corp. v. Askew*, 511 F.2d 710, 719 (5th Cir. 1975).  Privity "represents a legal conclusion that the relationship between the one who is a party to the record and the non-party is sufficiently close to afford application of the principle of preclusion." *Sw. Airlines Co. v. Tex. Int'l Airlines, Inc.*, 546 F.2d 84, 95 (5th Cir. 1977).

In determining the fourth element—whether "the same claim or cause of action is involved in both suits"—courts in this circuit apply the "transactional test":

> Under the transactional test, a prior judgment's preclusive effect extends to all rights of the plaintiff with respect to all or any part of the transaction, or series of connected transactions, out of which the original action arose. What grouping of facts constitutes a "transaction" or a "series of transactions" must be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

*Test Masters Educ. Servs. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005).  "The critical issue is whether the two actions under consideration are based on the same nucleus of operative facts." *Petro-Hunt, L.L.C. v. United States*, 365 F.3d 385, 396 (5th Cir. 2004) (quotation marks and quoting reference omitted).

7

### III. Analysis

The Davilas argue that Salon Suites's fraudulent inducement claim is precluded by the bankruptcy court's final judgment in the adversary proceeding. Salon Suites responds that *res judicata* does not apply because: (1) the adversary proceeding trial resolved only Salon Suites's breach of contract claim, not its fraudulent inducement claim; and (2) there is no identity of parties or privity between the Davilas and Davila General Contractors. Each argument is separately analyzed.

#### A. The Same Claim or Cause of Action

Salon Suites argues that this case does not involve the same claim or cause of action as the adversary proceeding because "the only claim litigated at Trial was whether [Davila General Contractors] breached the Construction Contract for failing to pay subcontractors." (Docket Entry No. 22 at 13). Here, by contrast, Salon Suites alleges that the Davilas personally induced Salon Suites to enter the construction contract with fraudulent misrepresentations. Salon Suites asserts that the proof of claim it filed in the bankruptcy "does not name any of the Defendants" or "state that fraud claims were being asserted against the Defendants." (*Id.*). Salon Suites also argues that *res judicata* does not apply based on the fact that Salon Suites could have brought fraud claims against the Davilas because "Salon Suites was not required to file a third-party claim against the Defendants when they were not parties to the Adversary Proceeding." (*Id.* at 14).

The critical inquiry is whether the final judgment in the adversary proceeding was based on "the same nucleus of operative facts" as this case. *Petro-Hunt*, 365 F.3d at 396. The obvious common nucleus of operative facts centers around the construction contract—what the Davilas told Salon Suites before the parties entered the contract and what the Davilas did post-execution. Salon Suites cannot separate the misrepresentations the Davilas allegedly made before execution

8

from their conduct after execution. Preclusion "extends to all rights of the plaintiff with respect to all or any part of the transaction, or series of connected transactions." *Singh*, 428 F.3d at 571.

The allegations underlying Salon Suites's fraudulent inducement claim were clearly placed in issue in the bankruptcy. Salon Suites's proof of claim alleged that Davila General Contractors "knowingly entered into the Construction Agreement with Salon Suites knowing it had no intention of completing the project or upholding its bargain of the deal." (Docket Entry No. 21-1 at 5). Salon Suites expressly called this "fraud." (*Id.*). Salon Suites's motion to dismiss under § 707(a) similarly charged Davila General Contractors with "fraud," consisting of "knowingly underbid[ding] the construction cost of the Project knowing it had no intention of completing the project or upholding its end of the bargain." *In re Davila*, No. 1:21-bk-10090, Doc. 31 at ¶ 21. And even if the bankruptcy court did not specifically resolve Salon Suites's fraud allegations, Salon Suites could have raised its fraudulent inducement claim in the adversary proceeding. *See* FED. R. BANKR. P. 7013; *Lubrizol Corp. v. Exxon Corp.*, 871 F.2d 1279, 1287 (5th Cir. 1989) ("[C]laim preclusion applies not only to 'causes of action' raised in pleadings, but also to claims which were raised, or could have been raised, as part of the same cause of action.").

### B. Privity

Salon Suites argues that the Davilas are not in privity with Davila General Contractors because they "are being sued in their individual capacity for specific wrongdoing that they committed," not simply as "agent[s] of [Davila General Contractors]." (Docket Entry No. 22 at 16).

The court is unpersuaded. The employees of a corporation may assert *res judicata* on the basis of a prior suit involving the corporation. *See Lubrizol Corp. v. Exxon Corp.*, 871 F.2d 1279, 1289 (5th Cir. 1989) (concurring in the conclusion of "[m]ost other federal circuits . . . that

9

employer-employee or principal-agent relationships may ground a claim preclusion defense, regardless which party to the relationship was first sued") (citations omitted). For example, the Fifth Circuit held in *Lubrizol* that a fraud action against Exxon employees was precluded by a prior action against Exxon involving the same employees' alleged fraud. *Id.* at 1288–89. The Fifth Circuit has stated the privity test in practical terms, asking whether the relationship "is close enough to justify the application of *res judicata* so as to bar a second suit based on the same cause of action as the first suit." *Russell v. SunAmerica Sec., Inc.*, 962 F.2d 1169, 1176 (5th Cir. 1992).

The Davilas' relationship with Davila General Contractors, as reflected on the face of the complaint, is sufficiently close to warrant preclusion. Salon Suites alleges that the Davilas "were owners and/or employees of Davila General Contractors, LLC," which was "a family owned and operated business." (Docket Entry No. 17 at ¶¶ 7). Salon Suites has not convincingly argued that its allegations against the Davilas are unrelated to their status as agents of Davila General Contractors. Salon Suites's claims against the Davilas are based on representations the Davilas allegedly made to secure the construction contract and to obtain payments from Salon Suites on behalf of Davila General Contractors. (*Id.* at ¶¶ 7–31). The authorities Salon Suites relies on are inapposite because they involve relationships more attenuated than the Davilas's relationship with Davila General Contractors—for example, the relationship of a publicly traded company to its directors, officers, and shareholders. *See Howell Hydrocarbons, Inc. v. Adams*, 897 F.2d 183, 185 (5th Cir. 1990).

## IV.     Conclusion

Salon Suites's claims against the Davilas are barred by the prior bankruptcy and adversary proceeding involving Davila General Contractors. The Davilas's motion to dismiss is granted.

(Docket Entry No. 21). The case is dismissed with prejudice. A final judgment will be issued separately.

SIGNED on May 6, 2024, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge